The Chief Justice delivered the opinion of the court.
Judgment having been, sometime since, obtained upon the official bond of Edward Welsted, late sheriff of the county of Hunterdon, and his sureties, application is now made by John Beaumont, ^alleging himself to be aggrieved by [*398 the default of the sheriff, to direct a further sum to be levied thereon. From the sale of certain mortgaged premises under an execution out of the Court of Chancery in favor of Beaumont, the sheriff received, on the 7th of May, 1825, the sum of $1,154.53, of which he paid the complainant’s solicitor in May, 1829, $300; and the residue after deducting the sheriff’s execution fees, together with interest and costs the applicant now seeks to have levied for his use. This claim is not controverted ; but the difficulty arises from a counter claim set up on the part of the sheriff. Two executions, one from this court, and Ihe other from the Court of Common Ploas of the *472 county of Hunterdon, in favor of Beaumont against William Maris, for very large sums of money, were, together with the Chancery execution, received by the sheriff during the same official year. Difficulties occurred in the progress of these common law executions. Ho sales have been made, or moneys raised or paid by the sheriff to Beaumont under either. The reasons, with the facts concerning both, are set forth in the state of the case submitted to us. The sheriff and his sureties claim the execution fees on these two executions ; that the amount should be set off against the sum due Beaumont on the Chancery process; and that the balance only should be now directed to be levied. Beaumont controverts the amount claimed by the sheriff; and alleges he is entitled, if to any thing, to much less; and insists that he must obtain his compensation elsewhere, for that no set off can be legally made here.
The measure now sought by the sheriff and his sureties is certainly not within our statute concerning set-offs; and cannot be sustained by its provisions. Here can be no plea of payment; no notice in writing of what will be given in evidence upon the trial; no jury to try the claims of the parties, and to “ set-off or discount so much as has been paid or satisfied;” no verdict “for the amount of the residue or balance.” In short, neither can the terms or provisions of the statute be complied with, nor are the respective demands such as were designed by the statute, to become the subject of set-off.
Besides the set-off by statute, courts of law have assumed and exercised a jurisdiction over mutual demands deducting one from another, or satisfying one by means of the other, iú analogy to the wise and beneficial provision of the statute; *399] not however because *supported by it; but because incidental to the due administration of the laws and flowing from their right to control their suitors to such a course as is demanded by equity and justice. Montagu on set off, 6; Mitchell v. Oldfield, 4 T. Rep. 123. But this extraordinary *473 power is only exorcised where the demands are fixed and ascertained by the admission of the parties, by judgments, or by something equivalent, and rendering equally certain the right and the amount; and the reason of this very limited exercise is obvious and satisfactory. Were the exercise more general, as the proceeding is of a summary nature, the parties would be deprived of the ordinary modes for the trial of controverted claims and of the established methods of review and redress for error. Thus in Peacock v. Jeffry, 1 Taunt. 425, where a judgment previously obtained by the defendant against the plaintiff for a larger sum, was, in effect, set off against a debt in suit, by rule to stay further proceedings, the existence and amount of the debt in suit were admitted by the defendant, at whose instance the rule was made. In Barker v. Braham, 2 Wm. B. 869, a judgment of the King’s Bench was set off against a judgment in the Common Pleas. Chief Justice Do Grey said “ The common law was very narrow in its principles with respect to stoppage or set offs. He agreed to allow" the motion, but desired it to be remembered, that it was the case of one judgment against another, both in the same right and must be distinguished from setting off private debts, not in suit, and for which no judgment had been obtained.” In the Jtaie Bank at Trenton v. Coxe, Justice Ford said, “ The great question here, to bring this case within the range of the decisions cited, is whether the demand of the party making the application is admitted.” 3 Halst. 172.
Inasmuch then as the claim proposed to be set off' here is open and controverted, both as to existence and amount; as it remains unascertained either by judgment or even by the ordinary mode of taxation, it appears to me that no allowance for it can be made; and that we should order to be levied upon the judgment on the sheriff’s bond, the amount raised by the sheriff on the chancery execution after deducting his poundage and fees thereon, with interest, crediting the payment admitted to have been made. The legal rule *474 we are bound to pursue accords with just and sound policy - Nothing leads more certainly or frequently to the embar*400] rassments *and defalcations of sheriffs, which we have often occasion to lament, than the mingling together the proceeds of different executions.
Upon the principle of calculation which I have just stated
Let an assessment be made.